**A. Ernest FITZGERALD**

v.

**UNITED STATES CIVIL SERVICE COMMISSION et al., Appellants.**

**No. 76–1144.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 22, 1977.

Decided April 13, 1977.

Thomas G. Wilson, Atty., Dept. of Justice, Washington, D.C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellants. Morton Hollander, Atty., Dept. of Justice and Michael J. Ryan, Asst. U. S. Atty., Washington, D.C., also entered appearances for appellants.

John Bodner, Jr., Washington, D.C., with whom John F. Bruce, Albert O. Cornelison, Jr. and William Sollee, Washington, D.C., were on the brief, for appellee.

Before BAZELON, Chief Judge, McGOWAN and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

The sole question for review is whether section 14 of the Veterans' Preference Act of 1944, as amended in 1947, 5 U.S.C. § 7701, authorizes the Civil Service Commission to award attorney's fees to a wrongfully discharged federal employee en-

titled to protection under the Act.[1] Appellee, a "veteran preference eligible employee," was terminated from his job with the Air Force. He appealed his discharge to the Civil Service Commission, seeking reinstatement and, *inter alia*, attorney's fees. Following a lengthy proceeding,[2] the Commission found in favor of appellee but concluded that it was not authorized to award attorney's fees.[3] Appellee brought suit in the district court challenging the decision regarding attorney's fees. The district court found in favor of appellee, granting his motion for summary judgment. The court concluded that authority to award attorney's fees could be found in the language of section 14 directing the appropriate administrative agency to take "the corrective action that the Commission finally recommends." 407 F.Supp. 380 (D.D.C. 1975). We hold that attorney's fees are not awardable under § 14 because that section does not contain the requisite express waiver of sovereign immunity.

 There is no mention in § 14 of monetary relief in general, or attorney's fees in particular. Consequently, the argument that § 14 authorizes attorney's fees had to proceed under the more general "corrective action" language. Viewing this language as a "broad grant" of remedial authority, 407 F.Supp. at 383, the district court first noted that nothing in the legislative history of the Act indicated that it did not encompass attorney's fees, *id.* at 383–84.[4] Indeed, the two policies underlying the Act—making aggrieved veterans whole and providing veterans extra protection in federal employment—required that "corrective action" be read broadly. *Id.* at 386. Secondly, the district court reasoned that since "corrective action" had properly been read to authorize the award of backpay,[5] "then Con-

1. 5 U.S.C. § 7511 sets out standards for determining eligibility under the Act. Section 14 provides that those who are eligible are:

 entitled to appeal to the Civil Service Commission from an adverse decision under section 7512 of this title of an administrative authority so acting. The employee shall submit the appeal in writing within a reasonable time after receipt of notice of the adverse decision, and is entitled to appear personally or through a representative under regulations prescribed by the Commission. The Commission, after investigation and consideration of the evidence submitted, shall submit its findings and recommendations to the administrative authority and shall send copies of the findings and recommendations to the appellant or his representative. *The administrative authority shall take the corrective action that the Commission finally recommends.* (Emphasis added.)

 *See* text at note 4 *infra.*

 The complaint alleged only the Administrative Procedure Act as the source of the district court's jurisdiction in this case, and the district court relied upon that allegation. That base has, of course, been eliminated by the Supreme Court's recent decision in *Califano v. Sanders*, —— U.S. ——, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). It is evident that there is no legal impediment to the filing of a new complaint by appellee asserting § 1331 as a jurisdictional foundation; and, in light of that fact, we think that considerations of economy and expedition warrant are dispensing with the necessity for appellee to start all over again.

2. Fitzgerald's efforts to be reinstated and reimbursed began seven years ago, immediately following his termination on January 20, 1970. He has, on more than one occasion, been forced to seek judicial relief in order to ensure the integrity of the administrative hearing process.

3. The Commission reasoned that because another bill pending at the time the amendments to the Veterans' Preference Act were under consideration (the Back Pay Act of 1948, 62 Stat. 354), provided specifically for recovery of backpay, the Veterans' Preference Act did not authorize backpay awards. It concluded that the Veterans' Act therefore could not be construed to authorize attorney's fees awards (decision of January 3, 1974, J.A. 26–28).

4. On the other hand, nothing in the legislative history indicated that Congress contemplated that attorney's fees would be awardable under this language. In fact, the available legislative history suggests that the 1947 amendments had nothing to do with monetary awards at all. By adding the last sentence of § 14, Congress was simply making clear its intention that the recommendations of the Civil Service Commission were to be binding on the federal agency that had aggrieved the complaining veteran. H.R. Rep.No.315, 80th Cong., 1st Sess. (1947), p. 1–2; S.Rep.No.568, 80th Cong., 1st Sess. (1947), p. 1, 93 Cong.Rec. 7318 (1947).

5. This conclusion was based on several cases decided around 1950 and the legislative history of the Back Pay Acts of 1948 and 1966. *See* 407 F.Supp. at 386–87. Given our view of the

gress must have intended to allow a broad scope for the Commission's corrective action authority," *id.* at 384, broad enough to allow for attorney's fees.

In essence, the district court determined that, in the absence of contrary legislative history, the general language of § 14 should be construed broadly so that the statutory goals would be fully promoted. Although general remedial statutes running against private defendants are often construed in this manner,[6] a combination of factors requires a different result in this case. Not only does appellee seek money damages against the *government*,[7] but the particular recovery requested, attorney's fees, is, under our longstanding legal tradition, ordinarily not awarded to a prevailing party.

■ The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). In a case decided subsequent to the issuance of the district court opinion, *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court held that "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* at 399, 96 S.Ct. at 954. In applying that principle, the Court held that, in the absence of an express waiver, backpay could not be awarded under an act the stated purpose of which was "to provide a plan for classification of positions whereby . . . the principle

of equal pay for substantially equal work will be followed." *Id.* at 399, 96 S.Ct. at 954, *quoting* 5 U.S.C. § 5101.

■ *Testan* casts considerable doubt on the district court's decision. On its face, § 14 does not appear to constitute a general waiver of sovereign immunity.[8] However, even if the phrase "corrective action" can be construed to authorize award of backpay, it does not follow that attorney's fees are therefore awardable. "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 260, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The import of *Alyeska* and *Testan*, we believe, is that a general waiver of sovereign immunity should not be construed to extend to attorney's fees unless Congress has clearly indicated that it should. The statutory provision generally authorizing recovery of costs against the United States or any agency thereof, 28 U.S.C. § 2412 (1970), specifically excludes "the fees and expenses of attorneys" from awards permissible under that section. *See* 421 U.S. at 246, 265–68 & n.42, 95 S.Ct. at 1626 (awards of attorneys' fees against the United States, "if allowable at all, must be expressly provided for by statute"). Since the only support for finding a waiver of sovereign immunity with respect to attorney's fees is implied, rather than express, we hold that § 14 of the Veterans' Preference Act does not authorize the award of such fees to a prevailing complainant.[9]

---

case, however, it is not necessary to review the accuracy of this conclusion.

**6.** Appellee cites several cases for this proposition, *e. g.*, *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *EEOC v. Louisville & Nashville Ry. Co.*, 505 F.2d 610 (5th Cir. 1974).

**7.** Appellee vigorously asserts that sovereign immunity is not involved in this case. In particular, appellee distinguishes *Testan v. United States*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the case we believe governs this one, on the grounds that the statute involved in *Testan* does not contain language similar to that in § 14. Appellee reads *Testan* far too narrowly. As explained more fully in text, *Tes-*

*tan* requires a waiver of sovereign immunity to be express. Consequently, the issue here is not whether the language of § 14 is different from the statute involved in *Testan*, but rather whether § 14 expressly waives the sovereign's immunity.

**8.** In an appropriate case, it might be possible to find an express waiver in particularly clear legislative history. This is not, however, such a case, *see* note 4 *supra*.

**9.** The Tenth Circuit has recently reached the same conclusion. *Isaacson v. Hoffman* (No. 76–1742, Jan. 26, 1977), and *Trapp v. United States Civil Service Commission* (No. 76–1801, Feb. 4, 1977).

CONCLUSION

To deny attorney's fees under § 14, the district court feared, "would make a mockery and a sham of the mandate of Congress, and in cases like the present one would make those rights meaningless." 407 F.Supp. at 386–87. Unfortunately this may be correct. However, since Congress has not expressly waived the government's immunity, appellee's redress must come from the Congress, not the courts.

*Reversed.*